UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MARK J. WATSON | Misc. Case No. 11-617(JEB) / (DAR) |

## MEMORANDUM OPINION

In the latest chapter of *pro se* Petitioner Mark Watson's crusade against the Department of Labor's temporary H-1B non-immigrant visa program, he seeks to resurrect the exact claims that have been previously rejected in numerous administrative and judicial fora. Magistrate Judge Deborah A. Robinson, having been referred the case from this Court, has issued a Report and Recommendation proposing to dismiss the case with prejudice on *res judicata* grounds. Watson has now submitted his Objections to the Report. Finding that the Report appropriately recommends dismissal, the Court will accept it and grant the Department of Labor's Motion to Dismiss.

I.   **Background**

On November 7, 2011, Watson commenced this miscellaneous matter by filing a document entitled "Docketing Instructions for Application for Writ of Mandamus" and submitting a $46 filing fee. See ECF No. 1.[1] While his "Instructions" and subsequent "Original Petition for Judicial Review" are not entirely comprehensible, as best the Court can discern, he seeks judicial review of the Department of Labor's decision not to investigate several complaints he had lodged with the agency with respect to its H-1B non-immigrant visa program. See Opp.

---

[1] While Watson purports to bring this action under the Mandamus Act, 28 U.S.C. § 1361, his suit is not one for mandamus relief, as he is not seeking to "compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." Id. Instead, he seeks review of "a final agency action" by the Department of Labor. See Opp. at 1; see also Original Petition at 2. Such a challenge should have been filed as a civil matter – not as a miscellaneous matter – and accompanied by a $350 filing fee. See ECF No. 16 (Memorandum Order) at 2-3. Because the case will be dismissed, the Court will charitably not require full payment.

1

at 8 ("I, Mark J. Watson, am the petitioner in this judicial review and am aggrieved by the U.S. Department of Labor's implementation of the temporary H-1B nonimmigrant visa program, and its failure to conduct an investigation into the facts of my complaint."); see also ECF No. 2 (Original Petition).

This Court, as is typical in many miscellaneous matters, referred the case to Magistrate Judge Robinson for full case management. Labor subsequently moved to dismiss the case on January 3, 2012, contending Watson's claims were barred by the doctrine of *res judicata*. Because Labor's defense hinges on Watson's prior litigation, Magistrate Judge Robinson included a lengthy background section in her Report setting forth Watson's numerous legal challenges to the H-1B visa program. See Report at 2-3, 7-9. The tortuous history of Watson's complaints is also summarized in a February 2010 decision by a federal court in the Eastern District of Texas:

> In 2003, Petitioner Mark J. Watson ("Watson") filed complaints with the Wage and Hour Division ("WHD") of the Department of Labor ("DOL") alleging violations of certain provisions of the Immigration and Nationality Act (the "Act"). Watson's complaints pertained to the temporary employment of aliens in certain specialty occupations. See 8 U.S.C. §§ 1101(a)(15)(H)(i)(B) and 1182(n).
> . . .
>
> Watson alleged that he was discriminated against by EDS, the Bank, and IBM under the H-1B provisions because he was displaced by or had not been hired because of the employment of H1B workers. The WHD of DOL determined that there was no reasonable cause to investigate Watson's allegations. Watson was notified that the determination of "no reasonable cause" for an investigation was not subject to appeal. After Watson was notified of the decision not to investigate, Watson requested an administrative hearing of his EDS complaint. Watson then requested hearings regarding his complaints against the Bank and IBM. In each case, various Administrative Law Judges granted summary judgment to EDS, the Bank, and IBM.
>
> Watson then appealed each of these decisions to the Board. After consolidation of EDS and the Bank's cases, the Board, on May 31, 2005,

issued its final decision declining review. On October 20, 2006, the Board declined to review the decision regarding IBM.

Watson attempted to appeal the Board's decisions in the Northern District of Texas. These cases were dismissed. Watson then appealed to the Fifth Circuit Court of Appeals. The Fifth Circuit also dismissed the appeals as frivolous. See Watson v. Elec. Data Sys., 191 F. Appx. 315 (5th Cir. 2006); Watson v. Bank of Am., 196 F. Appx. 306 (5th Cir. 2006). Watson's petition for certiorari was denied by the United States Supreme Court. See Watson v. Bank of Am., 548 U.S. 1362 (2007).

Watson also filed complaints relating to IBM, the Bank, and EDS in the Court of Federal Claims. These complaints were denied. See Watson v. United States, No. 06-716, 2007 WL 5171595 (Fed. Cl. Jan. 26, 2007), appeal denied, 240 F. Appx. 410 (Fed. Cir. 2007), cert. denied, 552 U.S. 868(2007). Watson's requests for relief from judgment and for reconsideration were denied by the Court of Federal Claims with instructions to the clerk not to accept further motions relating to Watson's original complaint. On March 5, 2008, Watson's complaint for "liquidated damages" was dismissed on res judicata grounds by the Court of Federal Claims. See Watson v. United States, 86 Fed. Cl. 399 (2009). This dismissal was affirmed. See Watson v. United States, No. 09-5081, 2009 WL 3198756 (Fed. Cir. Oct.7, 2009).

On June 22, 2009, Watson filed his Original Petition for Judicial Review and Application for Declaratory Judgment. On August 12, 2009, Watson filed his Amended Petition for Judicial Review and Application for Declaratory Judgment. In both pleadings, Watson asserted that this was "an appeal of a final agency action (a.k.a. application for writ of mandamus) filed in the district court under the jurisdictional authority of 28 U.S.C. § 1361 pursuant to 5 U.S.C. § 701 through 5 U.S.C. § 706."

Watson v. Chief Admin. Judge, U.S. Dep't of Labor, No. 09-310, 2010 WL 715570, at *1-2

(E.D. Tex. Feb. 23, 2010).

The Eastern District of Texas court granted Labor's Motion to Dismiss, finding that it lacked jurisdiction to consider the action. See id. at *5. Having dismissed Watson's claim on jurisdictional grounds, the court stated that it did "not need to reach" the issue of *res judicata*; it did note, however, that "the Court believes that this action would also be barred by res judicata. Watson has pursued these claims in various venues for more than six years. The issues are the

same in each venue. Watson merely alters the relief sought or the claim asserted, but all of the issues arise out of the same facts: Watson's failure to obtain review of the decision not to investigate his claims." Id.

The Fifth Circuit subsequently affirmed this decision. See Watson v. Chief Admin. Law Judge, No. 10-40411, 2010 WL 4033991, at *2-3 (5th Cir. 2010) (affirming district court's ruling that it lacked subject-matter jurisdiction over case). Having found that there was no subject-matter jurisdiction over Watson's claims, the Fifth Circuit determined that there was no need to "decide whether the doctrine of res judicata also bars the claims." Id. at *3 n.3.

Against this factual backdrop, Magistrate Judge Robinson issued her Report on November 30, 2012, recommending dismissal under the doctrine of *res judicata*. See Report at 6-10. Watson timely filed his Objections to the Report on December 12, 2012.

## II. Legal Standard

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered her recommended disposition, a party may file specific written objections. The district court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see, e.g., Winston & Strawn LLP v. FDIC, 841 F. Supp. 2d 225, 228 (D.D.C. 2012) (court must conduct *de novo* review of objections to magistrate judge's report and recommendation). The district court may then "accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

## III. Analysis

Petitioner raises two objections to the Report's recommendation of a dismissal on *res judicata* grounds.[2] First, he maintains that the jurisdictional deficiencies that led to the prior

---

[2] Watson also raises objections to the Magistrate Judge's "FAILURE to demand the administrative record and allowing the government to intervene without leave." Obj. at 3 (emphasis in original). Neither contention alters the

dismissals are "cured" by his "arguments concerning the Chevron Doctrine." See Obj. at 3-4. Second, he contends that "[t]he Doctrine of Res Judicata was never intended to [be] applied to jurisdictional dismissals or [to] protect attorney misconduct." Id. at 4.  The Court will address Watson's *res judicata* objections before turning to an alternate ground for dismissal: his failure to state a claim under the APA or the Mandamus Act.  Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), will receive mention along the way.

   A.  *Res Judicata*

   Labor contends that Watson's claims are barred by *res judicata*.  See Mot. at 3-4. Specifically, it points to "several civil actions" wherein Watson sought "to overturn the decision by Labor's Wage and Hour Division not to investigate his complaint that EDS terminated his employment and hired an H1-B foreign worker in his place in violation of the Immigration and Nationality Act." Id. at 4.  Because the claims Watson pursues here are the very same claims that have already been rejected by other courts, Labor maintains that "res judicata requires the dismissal of this action." Id.  Labor cites several of these decisions dismissing Watson's claims, including a Fifth Circuit decision observing, "[T]his is not Watson's first time in federal court on these claims.  Including the instant case, he has filed no less than five federal lawsuits based on substantially similar factual allegations, resulting in at least nine written opinions, none of which have resolved even a single issue in his favor."  Watson, 2010 WL 4033991, at * n.1.

   Watson counters that the prior dismissals for lack of subject-matter jurisdiction are not dispositions on the merits and thus cannot bar his claims under *res judicata*.  See Opp. at 6-8; Obj. 8-9.  The Court disagrees.  As Magistrate Judge Robinson notes in her Report,

---

outcome here.  Where Petitioner seeks judicial review of an agency action, he cannot avoid the agency's participation in the action by framing this as a "writ of mandamus"; it was thus not error for Magistrate Judge Robinson to allow Labor to participate.  Additionally, because the Court finds that Watson has failed to state a claim, there is no need for it to review the administrative record.

> A dismissal for lack of jurisdiction is ordinarily not a final judgment on the merits, as the litigant may "refile the action in an appropriate forum." Prakash v. Am. Univ., 727 F.2d 1174, 1182 (D.C. Cir. 1984). However, "if a court makes a substantive determination in order to arrive at a jurisdictional holding, the substantive determination can have issue preclusive effect so long as it was actually litigated and determined in the prior action."

Report at 8 (citing NextWave Pers. Commc'ns, Inc. v. FCC, 254 F.3d 130, 148 (D.C. Cir. 2001), aff'd sub nom., FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293 (2003)).  The Report also explains that a judgment ordering dismissal will "'preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal,'" unless there are developments subsequent to the initial dismissal that "'cure' the jurisdictional deficiency identified in the first suit."  Report at 8-9 (quoting GAF Corp. v. United States, 818 F.2d 901, 912-13 (D.C. Cir. 1987)).

Watson contends that such changed circumstances exist here because his "arguments concerning the Chevron Doctrine CURE . . . the jurisdictional issues brought up in the Northern District of Texas' decision, Eastern District of Texas' decision, and Fifth Circuit's opinion . . . ." Obj. at 3.  Whatever this means, Watson's "arguments" concerning Chevron cannot provide the sort of additional jurisdictional facts contemplated in GAF Corp. that would allow him to "cure" the deficiencies in his previous filings and relitigate the issues that led to the prior dismissals of his claims.  See 818 F.2d at 912-13 & n.73 (providing examples of "curable defects," including service of process and submission of a necessary affidavit required for denaturalization proceeding).  The Chevron decision, moreover, does not create an independent source of jurisdiction; it merely articulates the deference a court should afford an agency when evaluating its interpretation of a statute it administers.  See 467 U.S. 837.  As Watson has cited no authority to suggest that the jurisdictional defects that previously barred his claims can now be cured, the Report correctly held that this suit was barred by *res judicata*.

B.  <u>12(b)(6) Dismissal Otherwise Appropriate</u>

Even if *res judicata* did not apply to the claims here, dismissal would otherwise be required because Watson has failed to state a claim.  Watson's Petition purports to bring his claims pursuant to the Mandamus Act and the judicial-review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–06, which establish a cause of action for parties adversely affected either by agency actions or by an agency's failure to act.  <u>See</u> Petition at 2.  Because the challenged agency action here was discretionary – namely, the decision by Labor's Wage and Hours Division not to investigate Watson's complaints – he cannot state a claim under the Mandamus Act or the APA, which "explicitly excludes from judicial review those agency actions that are 'committed to agency discretion by law.'"  <u>Sierra Club v. Jackson</u>, 648 F.3d 848, 855 (D.C. Cir. 2011) (quoting 5 U.S.C. § 701(a)).

The Fifth Circuit – faced with the exact same challenge as here – reasoned:

> Under the APA, there is no judicial review of agency action when that "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  The H-1B provisions of the INA instruct the Secretary of Labor (or her designee) to "conduct an investigation" into complaints that an employer has failed to abide by the H-1B provisions regarding the displacement of U.S. workers with H-1B foreign workers "if there is reasonable cause to believe that such a failure . . . has occurred."  8 U.S.C. § 1182(n)(2)(A).  By the terms of the INA, therefore, only the Secretary is empowered to make this reasonable-cause assessment.  In other words, WHD's determination that there was no reasonable cause to investigate Watson's allegations, and the Board's affirmance of that determination, are decisions that are committed to the discretion of a federal agency under the statute and, therefore, are unreviewable.  <u>See</u> <u>Heckler v. Chaney</u>, 470 U.S. 821, 832 (1985) ("[A]n agency's decision not to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion." (citations omitted)); 20 C.F.R. § 655.806(a)(1) (providing that under § 1182(n)(2), "[n]o hearing or appeal ... shall be available where the Administrator [of WHD] determines that an investigation on a complaint is not warranted.").

See Watson , 2010 WL 4033991, at *2.[3]

The Fifth Circuit further determined that the federal mandamus statute, 28 U.S.C. § 1361, could not confer jurisdiction: "Issuance of a writ of mandamus is an 'extraordinary remedy, available only where government officials clearly have failed to perform nondiscretionary duties.' Here, WHD's decision not to investigate was entirely discretionary under the statute, and thus it cannot support any contention by Watson that mandamus should issue." Id. (internal citations omitted). Because Watson has failed to state a claim under the APA or the Mandamus Act, dismissal of his Petition is required.

As courts have previously recognized, Petitioner's efforts to re-litigate the same claims for nearly a decade in numerous courts present a significant drain on judicial resources. See, e.g., Watson, 2007 WL 5171595, at *7 ("Plaintiff's persistent filings in the face of clear legal authority that preempts judicial review strains judicial resources."). While *pro se* litigants are afforded more leniency in presenting their cases, Watson's "*pro se* status does not render him immune from pleading facts upon which a valid claim can rest." Id. at *3 (citing Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002), and Constant v. United States, 929 F.2d 654, 658 (Fed. Cir. 1991)). Indeed, in Constant, the Federal Circuit sanctioned a *pro se* plaintiff for filing a frivolous appeal where

> [g]iven his long history of litigation and relitigation of the same issues, we can only conclude that Constant "by this time is certainly not without some practical experience with the law." Even more importantly, as we have noted above, Constant has twice been explicitly warned in opinions of this court that his prior conduct was frivolous, and that "if he persists by trying to raise again the same issues that have been finally decided . . . he could be sanctioned under Fed.R.Civ.P. 11, Fed. R. App. P. 38, and the

---

[3] As noted in the Report, in this Circuit "a complaint seeking review of agency action 'committed to agency discretion by law'" should be dismissed under Rule 12(b)(6) for failure to state a claim under the APA, rather than under the jurisdictional provision of Rule 12(b)(1). See Report at 7 n.4 (citing Sierra Club, 648 F.3d at 854). While the Fifth Circuit's analysis discussed above was a jurisdictional analysis under Rule 12(b)(1), its reasoning nonetheless applies here.

>inherent power of the courts to sanction." Given such clear, direct, and
>repeated warnings that the very arguments he here attempts to relitigate
>are frivolous, with citation to the specific rules under which he may be
>sanctioned, there is no escaping the conclusion that any reasonable person
>in Constant's position, even though a non-lawyer, would understand that
>the filing of this appeal is improper conduct which could subject him to
>sanctions.

Id. at 658 (internal citations omitted). While the Court will not impose sanctions this time, it cautions Watson that he may not be so fortunate if he continues to burden the courts with issues that have already been resolved. See Gomez v. Aragon, 705 F. Supp. 2d 21, 23 n.2 (D.D.C. 2010) (recognizing that sanctions may be imposed against *pro se* plaintiffs under Rule 11, and district court is "accorded wide discretion" in determining appropriateness of sanctions).

## IV.     Conclusion

For the reasons stated herein, the Court will issue a contemporaneous Order accepting the Recommendation of the Magistrate Judge to grant the Department of Labor's Motion.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: December 19, 2012